IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ( |
| | ( |
| Jeremiah Thomas, Sr. a/k/a Jeremiah L. Thomas and Kimberly Thomas a/k/a Kimberly D. Thomas, | ( Bankruptcy No. 05-24671/JKF ( ( |
| Debtors | ( Chapter 13 ( |
| | ( |
| Jeremiah Thomas, Sr. a/k/a Jeremiah L. Thomas and Kimberly Thomas a/k/a Kimberly D. Thomas | ( ( ( ( |
| Plaintiffs | ( ( |
| v. | ( Adversary No. 05-3042 ( Related to Dkt. No. 11, Motion for |
| Countrywide Home Loans, Inc., as Servicing Agent for Mortgagee of Record; Chapel Mortgage Corporation, Mortgagee of Record; and Unified CCR Partners, | ( Partial Summary Judgment Filed on ( behalf of Debtors[1] ( ( ( ( |
| Defendants | ( ( ( |

Appearances:
    John P. Vetica, Jr., Esquire, for Debtors
    Jay B. Jones, Esquire, Donna M. Donaher, Esquire, for Defendants

---

[1]The motion is docketed as a motion for summary judgment but the pleading itself is titled motion for partial summary judgment.

## MEMORANDUM OPINION[2]

The motion before the court is Debtors' motion for partial summary judgment with respect to a Complaint Seeking Determination of Secured Status filed on behalf of Countrywide Home Loans, Inc. ("Countrywide"). Countrywide is the servicing agent for Chapel Mortgage Corporation, the mortgagee of record. Complaint, Adv. Dkt. No. 1, at unnumbered page 2. We are asked to determine whether Countrywide's secured interest falls within the anti-modification provisions of 11 U.S.C. §1322(b)(2).[3] Furthermore, we are asked to determine the applicability of judicial estoppel due to Countrywide's assertion of the property's value in an earlier proceeding in this case. We conclude that judicial estoppel does not apply under the circumstances and that Debtors' mortgage with Countrywide can be modified because it is secured by an interest in property other than real property that is the Debtors' principal residence.

The Debtors obtained a mortgage from Chapel Mortgage Corporation on October 10, 2003, in which they conveyed a security interest in their principal residence. Countrywide is the servicer for this mortgage. There are two clauses at issue in the mortgage document in this case, which are both located in the Uniform Covenants section of the document. The first concerns the escrow account and compliance with the Real Estate Settlement Procedures Act

---

[2] The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

[3] The 2005 amendments to the Bankruptcy Code (Bankruptcy Abuse Prevention and Consumer Protection Act of 2005) ("BAPCPA"), 11 U.S.C., including the definitions of "debtor's principal residence" and "incidental property," do not apply to these proceedings as the bankruptcy case was commenced before the effective date of the Act, which was October 17, 2005. Therefore, BAPCPA's inclusion of escrow funds in its definition of "incidental property" is inapplicable to this case.

("RESPA"), 12 U.S.C. §2601 *et seq*. The mortgage includes various covenants, one of which states, "[i]f there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA." Adv. Dkt. No. 12, Exh. A, at 4, ¶ 3.

The mortgage also contains a covenant titled "Assignment of Miscellaneous Proceeds; Forfeiture," which states that all such proceeds "are hereby assigned to and shall be paid to Lender." *Id*. at 8, ¶ 11. The mortgage defines "Miscellaneous Proceeds" in paragraph (L) as:

> any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

*Id*. at 2. The covenant regarding Miscellaneous Proceeds requires Countrywide to use them for restoration or repair of the property if economically feasible and if its security "is not lessened." *Id.* at 8, ¶ 11. If restoration/repair is infeasible or the lender's security is lessened, Miscellaneous Proceeds are to be "applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to" Debtors. *Id*.[4] If there are additional Miscellaneous Proceeds after restoration or repair and Countrywide is satisfied regarding the condition of the property, the Miscellaneous Proceeds are to be paid to the Debtors. *Id.* If restoration or repair is economically infeasible, Countrywide is to apply the Miscellaneous Proceeds to the outstanding debt. *Id.* In the event of a total taking, destruction, or loss of

---

[4] If the lender applies the Miscellaneous Proceeds to restoration/repairs, it has the right to hold Miscellaneous Proceeds until it inspects the property and it need not pay the Borrower interest on the funds unless required by law or a written agreement with Debtors. *Id*.

3

value, Countrywide is to apply the Miscellaneous Proceeds to the outstanding debt and any excess is to be paid to Debtors. *Id.* If there is a partial taking and the fair market value equals or exceeds the amount secured, "the sums secured . . . shall be reduced" according to a formula stated in the document. *Id.* If there is a partial taking and the fair market value is less than the amount secured, the lender must apply Miscellaneous Proceeds to the sums secured, whether or not they are due. *Id.* at 9.

On April 15, 2005, the Debtors filed a voluntary petition under chapter 7 of the Bankruptcy Code. Bankr. No. 05-24671. On June 27, 2005, Countrywide filed a Motion for Relief from Stay claiming that Debtors had failed to tender payments from March 2005 to June 2005. Bankr. Dkt. No. 12. Countrywide attached as an exhibit to its motion a Broker's Price Opinion that stated the fair market value of the property as $140,000. *Id.* at Exh. A. The court entered a default order granting Countrywide's Motion for Relief from Stay on July 19, 2005. Bankr. Dkt. No. 19. Debtors subsequently filed a Motion to Reconsider Default Order on July 29, 2005, Bankr. Dkt. No. 21.

On August 26, 2005, the Debtors filed a Motion to Convert Case to Chapter 13. Bankr. Dkt. No. 33. The court entered an order converting the case on August 29, 2005, Bankr. Dkt. No. 36, and on August 30, 2005, a separate order vacating the default order granting relief from stay. Bankr. Dkt. No. 35.[5] The Debtors filed their complaint for determination of secured status on September 16, 2005, at Adv. No. 05-3042.

---

[5]There are two docket entries denoted as "35" due to the CM/ECF system's configuration. The first order entered at Bankr. Dkt. No. 35 is an order granting the motion for reconsideration. The second docket entry at number 35 is the order vacating the default order.

4

Analysis

A chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. §1322(b)(2). According to the Court of Appeals for the Third Circuit, the United States Congress enacted this provision with the intent "'to protect and promote the increased production of homes and to encourage private individual ownership of homes as a traditional and important value in American life.'" *In re Ferandos*, 402 F.3d 147, 151 (3d Cir. 2005), quoting *In re Davis*, 989 F.2d 208, 210 (6th Cir. 1993). However, a mortgagee who has an additional security interest gets no protection. *Ferandos, supra*, 402 F.3d at 152. If creditors take more than an interest in a debtor's real property used as a principal residence, the language of §1322(b)(2) is very clear; the secured claim is modifiable only if it secures something other than real property. When examining whether the claim was secured by something other than real property that is a debtor's principal residence, this court must look at "the effect of the grant in the instrument, not the actual existence of collateral available later to the creditor." *Id*. at 155, n.4. Countrywide's argument to the contrary, citing cases from outside the Third Circuit, is unavailing.

We must first determine whether Countrywide received a security interest in the Miscellaneous Proceeds and the escrow fund. A security interest is defined in the Bankruptcy Code as a "lien created by an agreement." 11 U.S.C. §101(51). Additionally, a lien is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. §101(37).

5

Although Countrywide's interest in the Miscellaneous Proceeds, defined in ¶ L of the mortgage, *see infra*, and escrow fund was included under the heading "Uniform Covenants," the paragraph preceding the covenants provides "THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property." Adv. Dkt. No. 12, Exh. A, at 3.  The escrow fund includes amounts due for taxes, assessments, premiums for insurance required by the lender, mortgage insurance premiums, ground rents or leasehold payments.  We must determine whether the instrument grants an interest in something other than real property.  The Supreme Court has made clear we must look to applicable state law, in this case Pennsylvania law, in defining real property. *Butner v. United States*, 440 U.S. 48, 55 (1979)(holding that unless there is an overriding federal interest, state law applies to the determination of property and security interests, inasmuch as state law creates and defines property interests).

We turn now to a discussion of the effect of Countrywide's security interest in the escrow funds.  In *Ferandos*, the Court of Appeals for the Third Circuit held that, under New Jersey law, the mortgage did not create a security interest in the escrow funds, as New Jersey law was clear that the mortgagor did not retain an interest in the funds. *In re Ferandos*, 402 F.3d 147, 156 (3d Cir. 2005).  However, the mortgage provisions at issue in this case are different than those in *Ferandos*.  An examination of the document establishes that Countrywide's mortgage included a security interest in the escrow funds.  The mortgage document specifically states that:  "Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply Funds at the time specified under RESPA. . ."

6

Adv. Dkt. No. 12, Exh. A, at 4, ¶ 3.  Under Regulation X enacted with respect to RESPA, the mortgagee shall refund any surplus in the escrow account over fifty dollars and may refund or apply to the next year's escrow account any surplus under fifty dollars if the mortgagor is current.  24 C.F.R. §3500.17(f)(2)(i).  However, if the mortgage servicer does not receive payment within 30 days of the payment due date, the servicer may retain the surplus in the escrow account in accordance with the mortgage loan documents.  24 C.F.R. §3500.17(f)(2)(ii).

Countrywide's mortgage documents state that it shall refund any excess funds to the Debtors (as "Borrower") upon full payment of the loan.  Adv. Dkt. No. 12, Exh. A at 4, ¶ 3.  The mortgage also allows it to hold the funds in an amount sufficient to apply the funds in the manner specified in the mortgage document.  Additionally, paragraph 2 of the covenants in the mortgage document governs the application of payments.  It provides that Countrywide shall apply all payments first to interest due under the Note, then to principal due under the Note, and then to amounts due for escrow items.  In the event that Debtors, as "Borrower," have more than one payment outstanding, Countrywide may apply any payment received from Debtors to the "Periodic Payment" until it is paid in full.  *Id*. at 3-4, ¶ 2.  The document defines "Periodic Payment" in Section N of the Definitions as "the regularly scheduled amount due for (I) principal and interest under the Note, plus (II) any amounts due under Section 3 [Escrow Items] of this Security Instrument."  *Id.* at 2.

Thus, the mortgage is clear that, under some circumstances, Countrywide has the ability to apply payments to its debt even though the money used is from the escrow and Countrywide has an obligation to refund any excess to the Debtors when the loan is paid in

7

full. Therefore, Debtors retain an interest in the escrow. Countrywide did not heed the warning of the Court of Appeals that "if the lender does not want its claim to fall outside of the protection of §1322(b)(2), it should not seek to 'get every last piece of collateral.'" *Ferandos, supra*, 402 F.3d at 152, quoting *Sapos v. Provident Inst. of Sav. in Town of Boston*, 967 F.2d 918, 925 (3d Cir. 1992).

Further, there is clear case authority in all three federal districts in Pennsylvania supporting the conclusion that, under Pennsylvania law, escrow accounts are not real property for purposes of 11 U.S.C. §1322(b)2). *See In re Donadio*, 269 B.R. 336 (Bankr.M.D.Pa. 2001); *In re Reed*, 247 B.R. 618 (Bankr.E.D.Pa. 2000); *In re Crystian*, 197 B.R. 803 (Bankr.W.D.Pa. 1996). In *Donadio* the court held that the escrow in the mortgage constituted additional collateral for purposes of §1322(b)(2)

> [b]ased upon the plain reading of the statute . . ., the specific and clear language of the mortgage document creating a separate and distinct security interest in the escrow funds, and the reasoned opinions of courts cited . . . .

269 B.R. at 339. *Reed* held that a tax and insurance escrow constituted additional security which removed the protection of §1322(b)(2). In *Crystian* this court held that the security interest taken by the lender in the escrow account was additional security, although the opinion did not describe the items that made up the escrow.

Thus, Pennsylvania law is well settled regarding the classification of escrow funds as personal property, rather than real property. Therefore, the security interest in the escrow

8

funds in the mortgage instrument takes the mortgage out of the anti-modification protection of §1322(b)(2).[6]

While this holding may obviate the need to discuss the Miscellaneous Proceeds provisions of the mortgage document, we will continue the analysis for the purpose of completeness.

Miscellaneous Proceeds are defined in ¶ L of the mortgage as

> any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5)[7] for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

---

[6]We note that in *Crystian* this court held that because the provisions regarding hazard insurance and condemnation proceeds were the subject of covenants which did not purport to give the lender a security interest in same, those items did not constitute additional security but were, in effect, substitute collateral as they had no existence independent of the property. 197 B.R. at 806. A covenant is defined as
> [a]n agreement, convention, or promise of two or more parties, by deed in writing, signed, and delivered, by which either of the parties pledges himself to the other that something is either done, or shall be done, or shall not be done, or stipulates for the truth of certain facts.

197 B.R. at 805, quoting BLACK'S LAW DICTIONARY 363 (6th ed. 1990). In the matter at bench, however, although the escrow provision is under the "Uniform Covenants" heading, the plain language of the mortgage document provides that it combined uniform and non-uniform covenants "to constitute a uniform security instrument covering real property." Adv. Dkt. No. 12, Exh. A, at 3. Thus, although the escrow funds in this case are the subject of a covenant, the mortgage document itself makes them part of the security covering the real property. Even if hazard insurance and condemnation proceeds otherwise would not constitute additional security as in *Crystian*, the escrow funds here include funds for taxes and assessments, insurance premiums, and proceeds of various causes of action. These items are not real property.

[7]Paragraph 5 of the mortgage document refers to hazard insurance. Adv. Dkt. No. 12, Exh. A, at 5-6, ¶ 5.

9

Adv. Dkt. No. 12, Exh. A, at ¶ L.

The inclusion of condemnation proceeds and hazard insurance proceeds in this mortgage are not additional security, even under this mortgage. The condemnation proceeds would be disbursed to Countrywide in exchange for the collateral by operation of state law. *See In re Crystian, supra*, 197 B.R. at 805, and cases cited therein. With respect to hazard insurance, the better reasoned cases hold that it is not additional security but an essential element of the underlying collateral which has no existence independent of the collateral. It exists only to cover loss of or damage to the real property. *Id.* at 805-06.

The security interest in the misrepresentation and third party insurance proceeds constitutes additional security. *See* Adv. Dkt. No. 12, Exh. A at 8, ¶ 11. Such proceeds will exist only as result of "compensation, settlement, award of damages, or proceeds paid by any third party" that do not constitute the proceeds of hazard insurance. *See* definition of "Miscellaneous Proceeds" at Adv. Dkt. No. 12, Exh. A, at 2, ¶ L. Thus, these proceeds can result only from a chose in action. A chose in action is clearly not real property that a debtor uses as a principal residence. Damages awarded as a result of misrepresentation of, or omission with respect to, the value or condition of the real estate similarly are personalty and arise from prosecution of a cause of action.

Debtors contend that judicial estoppel precludes Countrywide from asserting a property value different from that asserted in its motion for relief from stay. The Court of Appeals for the Third Circuit has considered judicial estoppel in the context of bankruptcy proceedings, most recently stating "[t]he doctrine of judicial estoppel prevents a party from asserting inconsistent legal claims in different proceedings. . . . Judicial estoppel is an

10

equitable doctrine within the court's discretion. . . . The doctrine was designed to prevent parties from 'playing fast and loose with the courts.'" *In re Mintze*, 434 F.3d 222 232 (3d Cir. 2006). Further, the Court of Appeals indicated that the purpose of the doctrine is to prevent a party from asserting an inconsistent position in order to obtain an unfair advantage. *Donaldson v. Bernstein*, 104 F.3d 547 (3d Cir. 1997). It is not required that the party against whom the doctrine is applied benefitted from a prior position, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996), but there must have been "intentional self-contradiction" to obtain an unfair advantage. *Scarano v. Central R. Co. of N.J.,* 203 F.2d 510, 513 (3d Cir. 1953).

We find that the doctrine of judicial estoppel does not apply here for two reasons. First, the order granting relief from stay by default to Countrywide, which relied on the Broker's Price Opinion attached to the motion for relief from stay for evidence of the value of Debtors' residence, has been vacated. Thus, the order is of no effect. Second, under 11 U.S.C. §506(a), the value of property is to be determined, *inter alia*, "in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. §506(a).[8] *Cf. In re Snider Farms, Inc.*, 79 B.R. 801 (Bankr.N.D.Ind. 1987)(valuation of collateral when debtor contemplates disposition of same is based on amount estate would expect to receive for the property, but where debtors propose to retain and continue to use the collateral, liquidation value is inappropriate). The value of the property submitted with a motion for relief from stay is used to determine whether the debtor has any equity in the property, and must be pled "with particularity." Fed.R.Bankr.P. 9013. *See also* Local Rule 9013-3. There

---

[8] Under the BAPCPA amendments of October, 2005, this section became §506(a)(1).

is no requirement that an appraisal be attached to the motion. A creditor can meet its burden of proof that a debtor has no equity by showing that the liens exceed the value stated. When the motion is uncontested, as it was here, the court need not determine the exact value. The court need only find that the property is over-encumbered and the debtor has no equity.

On the other hand, under §506(a), the value of the residence and the amounts owed to lienholders are used to determine the amount of the secured claim of the creditor and bind the parties as to a specific value which then must be paid to the creditor to satisfy the secured claim. Full appraisals, not just the "drive by" Broker's Price Opinion, are used for purposes of §506(a) when the matter is contested. Nonetheless, because the order granting relief from stay was vacated, there has been no finding of value. For these reasons, judicial estoppel does not apply to these facts.[9]

An appropriate order will be entered.

DATE: June 13, 2006

_____
Judith K. Fitzgerald
United States Bankruptcy Judge

---

[9]This point is illustrated by the fac that appraisal is an "inexact science." Thus, findings as to value do not necessarily have a *res judicata* effect. *In re Vacuum Cleaner Corp. of America*, 33 B.R. 701, 704, n.3 (Bankr.E.D.Pa. 1983).

THE CASE ADMINISTRATOR SHALL SERVE A COPY OF THIS MEMORANDUM OPINION ON THE FOLLOWING:

    John P. Vetica, Jr., Esquire
    600 Commerce Drive, Suite 601
    Moon Township, PA  15108-3106

    Jay B. Jones, Esquire
    Federman and Phelan, LLP
    1617 JFK Boulevard, Suite 1400
    Philadelphia, PA  19103-1814

    Ronda J. Winnecour, Esquire
    U.S. Steel Tower, Suite 3250
    600 Grant Street
    Pittsburgh, PA  15219

    Donna M. Donaher, Esquire
    Tucker Arensberg
    1500 One PPG Place
    Pittsburgh, AP  15222

    United States Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ( |
| | ( |
| Jeremiah Thomas, Sr. a/k/a Jeremiah L. Thomas and Kimberly Thomas a/k/a Kimberly D. Thomas, | ( Bankruptcy No. 05-24671/JKF |
| | ( |
| Debtors | ( Chapter 13 |
| | ( |
| Jeremiah Thomas, Sr. a/k/a Jeremiah L. Thomas and Kimberly Thomas a/k/a Kimberly D. Thomas | ( |
| | ( |
| Plaintiffs | ( |
| | ( |
| v. | ( Adversary No. 05-3042 |
| | ( Related to Dkt. No. 11, Motion for |
| Countrywide Home Loans, Inc., as Servicing Agent for Mortgagee of Record; Chapel Mortgage Corporation, Mortgagee of Record; and Unified CCR Partners, | ( Partial Summary Judgment Filed on ( behalf of Debtors[10] |
| | ( |
| Defendants | ( |

## ORDER

**AND NOW**, this 13th day of June, 2006, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED** that Debtor's Motion for Partial Summary Judgement is **GRANTED**.

---

[10]The motion is docketed as a motion for summary judgment but the pleading itself is titled motion for partial summary judgment.

  It is **FURTHER ORDERED** that a status conference with respect to issues remaining in the Adversary shall be held in Courtroom A, U.S. Steel Tower, 54th Floor, 600 Grant Street, Pittsburgh, PA, on **July 19, 2006**, at **2:30 p.m.**

             */s/ Judith K. Fitzgerald*   jmd
             Judith K. Fitzgerald
             United States Bankruptcy Judge

THE CASE ADMINISTRATOR SHALL SERVE A COPY OF THIS ORDER ON THE FOLLOWING:

 John P. Vetica, Jr., Esquire
 600 Commerce Drive, Suite 601
 Moon Township, PA  15108-3106

 Jay B. Jones, Esquire
 Federman and Phelan, LLP
 1617 JFK Boulevard, Suite 1400
 Philadelphia, PA  19103-1814

 Ronda J. Winnecour, Esquire
 U.S. Steel Tower, Suite 3250
 600 Grant Street
 Pittsburgh, PA  15219

 Donna M. Donaher, Esquire
 Tucker Arensberg
 1500 One PPG Place
 Pittsburgh, AP  15222

 United States Trustee

Dated: 6/14/2006
10:57:43

2